Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000870
28-JUN-2019
02:24 PM

NO. CAAP-17-0000870

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I,
Plaintiff-Appellee,
v.
EDUARO PRADO, also known as ERA PRADO,
Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE THIRD CIRCUIT
NORTH AND SOUTH HILO DIVISION
(CASE NO. 3DCW-17-0000133)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge and Leonard, J., with
Ginoza, Chief Judge, dissenting separately)

Defendant-Appellant Eduaro Prado, aka Era Prado,

(**Prado**) appeals from the Judgment and Notice of Entry of Judgment

entered on October 9, 2017 (**Judgment**), in the District Court of

the Third Circuit, North and South Hilo Division (**District**

**Court**).[1] After a bench trial, the District Court found Prado

guilty of disorderly conduct, as a petty misdemeanor, pursuant to

---

[1] The Honorable Charles H. Hite presided.

Hawaii Revised Statutes (**HRS**) § 711-1101(1)(a) and (3) (2014).[2]

On appeal, Prado argues that the District Court wrongly convicted him based on insufficient evidence.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we conclude that Prado's point of error has merit.

As a preliminary matter, as the State acknowledges, the District Court lacked jurisdiction to enter written Findings of Fact and Conclusions of Law on January 31, 2018, as Prado was convicted and sentenced on October 9, 2017. See Hawai'i Rules of Penal Procedure Rule 23(c); State v. Woodhall, 129 Hawai'i 397, 403 n.5, 301 P.3d 607, 613 n.5 (2013). Accordingly, the District Court's January 31, 2018 Findings of Fact and Conclusions of Law are null and void and will not be reviewed. Thus, we base our review on the District Court's Judgment, as well as its oral findings, which are as follows:

> [F]irst of all, I'm going to find that members of the Mayor's Office are also members of the public. I agree with the Prosecution that if they were considered not members of

---

[2]     HRS § 711-1101 provides, in relevant part:

> **§ 711-1101 Disorderly conduct.** (1) A person commits the offense of disorderly conduct if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, the person:
> (a)     Engages in fighting or threatening, or in violent or tumultuous behavior;
> . . . .
>
> (3) Disorderly conduct is a petty misdemeanor if it is the defendant's intention to cause substantial harm or serious inconvenience, or if the defendant persists in disorderly conduct after reasonable warning or request to desist. Otherwise, disorderly conduct is a violation.

the public, they would not have the protection of this statute. The case law that I have read is very clear so far that only police officers and persons acting as security people are not members of the public. But just regular employees of the Mayor I find are members of the public.

I also find that there is no proof of fighting or threatening behavior, and there is no proof of violent behavior. I am going to talk again about tumultuous behavior. I'm going to discuss that.

Acknowledging that each of these cases depends on its facts, I find that there was unreasonable noise. I believe that the kind of noise that would be present at the rally, which I believe was in the *Teale* case, that's not the same thing as going into the Mayor's Office. Which -- and there was testimony that, you know, people are more quiet, and I agree with that. You go into an office, you're not going to yell and -- necessarily going to yell and scream. And I find that there was unreasonable noise.[3]

I do not find any -- any evidence that Mr. Prado subjected another person to offensively coarse behavior or abusive language which is likely to provoke a violent response. And I agree with you, [Prado's counsel], that there was no specific conduct directed to anybody in particular, but that's not the end of this statute.

Tumultuous, this is -- tumultuous behavior, and I'm looking at the *Teale* case too[.] Tumultuous behavior most appropriately defined as conduct involving violent agitation or extreme outburst. And that's in the *Teale* case at 390 Pacific 3rd 1244. And the focus is not -- is upon what the Defendant personally did rather than how onlookers or observers acted in response.

So certainly there was testimony that the people who were there were alarmed. I find that the behavior was, in the context of this case, was a gross deviation from the standard of conduct the law abiding citizen would follow in the same situation.

I read the statute. There is no evidence that there was any admonition by a police officer that the noise was unreasonable and should be stopped or reduced. There is testimony of the Managing Director to that effect. However, subparagraph three states, Disorderly Conduct is a petty misdemeanor if it is the Defendant's intention to cause substantial harm or serious inconvenience, or if the defendant persists in disorderly conduct after reasonable warning or request to desist.

---

3       We note that the court's oral findings included findings related to unreasonable noise. However, as set forth in the Judgment, Prado was convicted pursuant to HRS § 711-1101(1)(a) and (3). The Judgment does not convict Prado pursuant to HRS § 711-1101(1)(b), which concerns unreasonable noise as defined in HRS § 711-1101(2); nor does the Judgment convict Prado pursuant to HRS §§ 711-1101(1)(c), 711-1101(1)(d), or 711-1101(1)(e), which describe other violative conduct.

. . . I don't want to make an interpretation of the statute that renders anything not enforceable. Do you have any -- what is your argument, [Prado's counsel], as to how subparagraph two and subparagraph three work together? Because subparagraph three does not mention the admonition of a police officer, but subparagraph does [sic]. What is your -- what is your argument as to that?

[PRADO'S COUNSEL]: I would have to say -- I would have to argue that they're to be interpreted separately. That one is an element -- that the portion that refers to the admonition of a police officer is an element of the offense itself. Whereas the subsection three just refers to how severely -- if the offense is committed, how severely it is to be punished.

THE COURT: Mr. [Prosecutor]?

[PROSECUTOR]: Your Honor, I think we don't even have to go there as far as the reasonable warning because we've already found that the noise was, through the witnesses was -- including the location and time of day of -- the time of day that the person's conduct involved the gross deviation from the standard of normal by a reasonable person.

THE COURT: Okay. My interpretation is that subparagraph two is stated in the disjunctive, not the conjunctive. So it can be either or. So I agree with the Prosecution in that.

So the final thing is, disorderly conduct is a petty misdemeanor if it is the Defendant's intention to cause substantial harm or serious inconvenience. Or if the Defendant persists in disorderly conduct after a reasonable warning or request to desist. . . . [S]ince [Prado] did not testify, I have to draw whatever inferences are possible as to intent from the evidence at hand.
. . . .

THE COURT: Talk about the intention, do you have anything to say about whether there's sufficient evidence of intention?

PROSECUTOR: I think the acts speak for themselves, Your Honor. And there was testimony by four separate individuals all from various locations in the office.

THE COURT: [Prado's counsel], anything else you wish to say?

[PRADO's COUNSEL]: Just that my client's clearly stated intent was to see the Mayor. And any actions he took were in an effort to see the Mayor. Not to purposefully --

[20 second gap in recording noted]

. . . .

THE COURT: There's two possible ways of proving it. One has to be intent, the other one has to be reckless. Certainly I find that [Prado] did recklessly create the risk thereof. And I find - - I find [Prado] guilty of a petty

4

misdemeanor. I find him guilty. I find that the
Prosecution has proven its case beyond a reasonable doubt.

Prado argues on alternative grounds that there was no substantial evidence to support his conviction, contending, *inter alia*, that the employees of the County of Hawai'i Office of the Mayor (**Mayor's Office**) were not "members of the public" for purposes of disorderly conduct, he did not possess the requisite *mens rea*, and that his conduct did not violate HRS § 711-1101(1)(a) (or the other charged subsections of the statute).

A person commits the offense of disorderly conduct under HRS § 711-1101(1)(a) "if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, the person: (a) Engages in fighting, threatening, or in violent or tumultuous behavior." HRS § 711-1101(a). As the Hawai'i Supreme Court has discussed, this subsection of the disorderly conduct statute thus includes "four alternative forms of conduct upon which guilt may be predicated," *i.e.*, fighting, threatening, violent, or tumultuous behavior. State v. Teale, 139 Hawai'i 351, 355, 390 P.3d 1238, 1242 (2017). Here, as set forth above, the District Court's finding of guilt pursuant to HRS § 711-1101(1)(a) is based on its conclusion that the State presented sufficient evidence of tumultuous behavior, rather than any of the alternative forms of conduct described in subsection (1)(a).

As the District Court recognized, in Teale, the supreme court held that tumultuous behavior is "conduct involving violent agitation or extreme outbursts," with the focus being on what the

5

defendant personally did, rather than on how others reacted to the defendant's conduct. Teale, 139 Hawai'i at 357, 390 P.3d at 1244. The supreme court rejected this court's broader definition of tumultuous, which included "conduct raising a great clatter and commotion or disturbance and uproar, and other actions that are unruly, disorderly or noisy, irregular, or contrary to public order and morality," holding that this was "precisely the sort of petty annoyances that the legislature sought to exclude in Hawaii's disorderly conduct statute." Id. at 358, 390 P.3d at 1245 (citation and internal quotation marks omitted). The supreme court clarified that to be "tumultuous," conduct must rise to the same gravity, intensity, and seriousness as fighting, threatening, or violent conduct. Id. at 359, 390 P.3d at 1246.

Here, there was testimony by employees of the Mayor's Office that Prado approached the reception area of the Mayor's Office and loudly and assertively yelled that he wanted to see the Mayor, as well as stuttered, hyperventilated, spoke incoherently, and acted "just not himself." Prado reportedly paced back and forth, continuously demanding to see the Mayor and pounding on the desk with a closed fist at least a few times. Prado continued loudly yelling that he wanted to see the Mayor and asserted to the employee at the front desk that he would "come in there," pointing inside the front desk area, but Prado did not challenge the front desk employee to a fight, make physical contact with any person, enter the area behind the desk, or cause any property damage, although various employees in the

6

Mayor's Office were concerned that he might do so.  Employees in the Mayor's Office were alarmed or scared by Prado's behavior. The County's Managing Director asked Prado to calm down because he was concerned about the staff members, but he was not concerned about members of the public because only staff people were there at the time.  Although one employee described the incident as lasting twenty to twenty-five minutes, the Managing Director testified that he thought Prado's yelling and pounding stopped within about five minutes at the most.  When the Managing Director "said to call the police," Prado left.

The District Court orally found that this was tumultuous behavior, but then referenced the unreasonable noise definition applicable to HRS § 711-1101(1)(b) as found in HRS § 711-1101(2), and made no finding that supports a conclusion that Prado's conduct rose to the same gravity, intensity, and seriousness as fighting, threatening, or violent conduct.  Nor can we conclude, based on the evidence presented in this case, that even considering the evidence in the light most favorable to the prosecution, that Prado's conduct was "violently agitated or marked by extreme outbursts," although it was irregular, caused a disturbance, and alarmed the employees in the Mayor's Office.

In addition, the District Court erred in concluding that "only police officers and persons acting as security people are not members of the public" and, on that basis, concluding that employees of the Mayor's Office were members of the public for the purpose of establishing culpability under HRS § 711-1101.

7

The Commentary to HRS § 711-1101 states, in part:

> Subsection (1)(a) is a standard clause in disorderly conduct legislation, <u>aimed at actual fights and at other behavior tending to threaten the public generally, for this section requires public alarm, etc., as distinguished from the private alarm which may accompany assault</u>. This is an important point. A person may not be arrested for disorderly conduct as a result of activity which annoys only the police, <u>for example</u>. Police officers are trained and employed to bear the burden of hazardous situations, and it is not infrequent that private citizens have arguments with them. Short of conduct which causes "physical inconvenience or alarm to a member or members of the public" arguments with the police are merely hazards of the trade, which do not warrant criminal penalties.

Commentary to HRS § 711-1101 (emphasis added; footnote omitted).

The Commentary makes clear that behavior aimed at the police is only *an example* of what is not covered by the disorderly conduct statute.  It also clarifies that the private alarm which may accompany behavior directed at a person or persons, as opposed to physical inconvenience or alarm by a member or members of the public (or recklessly creating the risk thereof), is not an adequate basis for a conviction under HRS § 711-1101.  <u>See also</u>, <u>e.g.</u>, <u>State v. Leung</u>, 79 Hawaiʻi 538, 544-45, 904 P.2d 552, 558-59 (1995) (conduct directed at a theater manager and the police was not aimed at the public or any member of the public generally).  Here, Prado's statements and conduct were aimed at the employees of the Mayor's Office, ostensibly to gain an audience with the Mayor, and not at the public or any member of the public generally.  Considering the evidence concerning Prado's conduct, and the inferences to be drawn from the surrounding circumstances, we conclude that a person of reasonable caution would not believe that the evidence was adequate to establish that when Prado yelled at, or in the

8

proximity of, employees of the Mayor's Office, and pounded his fist on the desk, his intent was to cause physical inconvenience or alarm by members of the public or that he recklessly created a risk thereof.

For these reasons, the District Court's October 9, 2017 Judgment is vacated, and this case is remanded to the District Court for the entry of an acquittal.

DATED: Honolulu, Hawai'i, June 28, 2019.

Presiding Judge

Associate Judge

On the briefs:

Jeffrey A. Hawk,
for Defendant-Appellant.

Leneigha S. Downs,
Deputy Prosecuting Attorney,
for Plaintiff-Appellee.